IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | | |
| The Heritage Organization, LLC, Debtor | § § | |
| THE HERITAGE ORGANIZATION, LLC., *et al.*, | § § § § | |
| Appellants | § § | Civil No. 3:06-CV-0578-H |
| v. | § § § | BK No. 304-35574-bjh-11 Adv.No. 04-03338 |
| W. RALPH CANADA, JR., | § § § | |
| Appellee | § | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on appeal from final judgment in a bankruptcy court proceeding. Before the Court are the Brief for Appellants, filed May 8, 2006; Brief of Appellee and Cross-Appellant, filed June 13, 2006; Brief of Cross-Appellee Dennis S. Faulkner, Trustee; Reply Brief of Appellants, filed July 19, 2006; Reply Brief of Cross-Appellant, filed August 3, 2006; and Letter Briefs from the parties, dated August 11, 2006, and August 14, 2006. Oral argument was held in this matter on August 10, 2006.

For the reasons that follow, the judgment of the bankruptcy court below is affirmed in part and reversed in part; and the underlying arbitration award is reinstated and affirmed in its entirety.

**I. Background**

On January 18, 2006, the bankruptcy court entered judgment affirming an arbitration award in part, vacating it in part, and rendering the vacated issue

["Bankruptcy Judgment"].  The underlying arbitration was conducted pursuant to an employment contract dispute between W. Ralph Canada, Jr., ["Canada"] on one side; and The Heritage Organization, L.L.C., GMK Family Holdings, and Gary M. Kornman on the other ["Heritage"].  Canada's demand for arbitration was filed on July 3, 2002, and a lengthy pre-arbitration procedural battle ensued.  Ultimately, three distinguished arbitrators were impaneled -- a former Fifth Circuit judge, a former Texas Supreme Court justice, and a former state district judge ["Panel"].  The arbitration hearing was held before the Panel on March 23-25, 2004.  By agreement of the parties, no record was made of the proceedings.  Also by agreement of the parties, the Panel issued no findings and conclusions, but merely announced the result of the arbitration.

On April 14, 2004, that result was announced in favor of Canada against Heritage for breach of contract, in an award of $6,161,270.08 ["Canada Award"].[1]  The amount includes a damages component of approximately $3.5 million, plus prejudgment interest through the arbitration award date, plus $886,000 in attorney's fees.  The Panel further ordered Heritage to pay all costs of arbitration; and even though Heritage prevailed in part on some claims, denied Heritage any of its attorney's fees.

On April 19, 2004, Canada applied to the state district court to affirm the award in state court.  On April 28, 2004, Heritage moved in that proceeding to vacate the arbitration award.  That same day, the state court entered an order confirming the arbitration award.  Hearing on Canada's motion for final judgment was set for May 18,

---

[1] The bulk ($3,413,676.93) of the damages award was for breach of an oral compensation agreement from 2000.  The remainder was for an "excessive deductions" breach of contract claim, decided in part for Canada and in part for Heritage.  For an oral compensation contract from 1998, the Panel found breach but awarded no damages.

2

2004.  On May 17, 2004, Heritage declared bankruptcy.  With Heritage's motion to vacate the award and Canada's motion for final judgment still pending, the case was removed to bankruptcy court.

After successive hearings and trial before two bankruptcy judges, final judgment was entered on January 18, 2006.  The bankruptcy court affirmed the Canada Award and supplemented it with $57,409.32 of additional prejudgment interest.  The court vacated, however, the Panel's decision denying Heritage its attorney's fees and costs.  Instead, the bankruptcy court ordered Canada to pay half the costs of arbitration, along with Heritage's arbitration-related attorney's fees in the total amount of $1,168,527.28 ["Heritage Award"].  After offsetting all of the awards, the bankruptcy court entered judgment for Canada in the amount of $5,050,152.12, which was allowed as an unsecured non-priority claim against the Debtor, Heritage ["Bankruptcy Judgment"].

On January 27, 2006, cross-appeals of the Bankruptcy Judgment were taken in this Court.  Heritage appeals the Canada Award and argues for affirmance of the Heritage Award.  Canada argues the validity of the Canada Award and appeals the Heritage Award, for which the Trustee urges affirmance.  On August 10, 2006, the Court heard oral argument from counsel for each concerned party.  The following is the decision of the seventh judge to hear this four-year-old case, for which speedy resolution by alternative means was intended.

## II.  Analysis

A.  <u>Standard on Appeal</u>

The district court reviews the bankruptcy court's findings of fact for clear error; and its conclusions of law *de novo*.  *In re Gamble*, 143 F.3d 223, 225 (5th Cir.1998); *see*

3

*also* 28 U.S.C. § 158(a) (investing the district court with jurisdiction to hear appeals from a final order of the bankruptcy court). Affirmance or vacatur of an arbitration award is reviewed *de novo*. *Brooke v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002); *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1020-21 (5th Cir. 1990). In this case, the question before the Court is whether the arbitration award is valid and should have been affirmed in the bankruptcy proceeding.

An arbitration award is subject to extreme deference, and the scope of review is "extraordinarily narrow." *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 354 (5th Cir. 2004); *Brook*, 294 F.3d at 672. A federal court has no authority to vacate an arbitration award unless (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(1)-(4); *see Forsythe Int'l, S.A.*, 915 F.2d at 1020. In addition to these four statutory grounds, only one other basis for vacatur exists in this Circuit. An arbitration award must be vacated if it is made in "manifest disregard of the law and contrary to public policy." *Kergosien*, 390 F.3d at 354.

When an arbitration agreement gives arbitrators authority to interpret a contract, their construction must be enforced so long as it is "rationally inferable from the letter or purpose of the underlying agreement." *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003). This "essence test" is part and parcel of the question whether an arbitrator exceeded the scope of his or authority. *See Kergosien*, 390 F.3d at 354-55. If an arbitrator's decision meets the essence test, it must be affirmed even if the reviewing court disagrees with the arbitrator's construction of the contract. *Executone Info. Sys.,*

4

*Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994) ["*Executone*"]. All doubts whether an arbitration panel exceeded its authority must be resolved in favor of arbitration. *Kergosien*, 390 F.3d at 355; *Executone*, 26 F.3d at 1320-21.

With these standards in mind, the Court turns to the arbitration awards at issue in this case.

B.   Canada Award

In the decision rendered April 14, 2004, the arbitration Panel awarded Canada damages against Heritage for breach of contract. The contract from which arbitration arises is a written employment agreement between Canada and Heritage, signed on March 1, 1995 ["Employment Agreement" or "Agreement"]. The contract for which damages were awarded is an oral agreement for additional compensation that Canada claimed Heritage agreed to in the year 2000 ["2000 Oral Agreement"]. In the written Employment Agreement, the parties warranted that "no modification of this Agreement may be made orally or inferred from a course of conduct." Agr. § 3.1(b)(3). Further, the Agreement by its terms was "complete, free-standing and self-contained," to be modified "only by an instrument in writing," and was to be "performed and enforced in accordance with its terms without reference to, or interpretation in conjunction with, any other agreement or understanding, including . . . any contemporaneous or subsequent agreement . . . other than [written] amendment or supplement." *Id*. § 10.10. The arbitrators, though given broad powers, were expressly forbidden to "make any ruling, finding, or award that does not conform to the terms and conditions of this Agreement." *Id*. § 11.6.

5

Notwithstanding the careful lawyering reflected in those phrases, the Panel upheld a subsequent oral modification, the 2000 Oral Agreement. Although the decision would appear to be at odds with the provisions set out above, this Court may not challenge its essential correctness on the merits. *See Kergosien*, 390 F.3d at 353-55; *Executone*, 26 F.3d at 1320-21. Because no record was made of the arbitration, and no findings or conclusions rendered, the Court cannot even revisit the process or reasoning with which the decision was made. *See Sarofim v. Trust Co. of the West*, 440 F.3d 213, 218 (5th Cir. 2006) ("Arbitrators need not give reasons for their awards [and] [u]ncertainty about arbitrators' reasoning cannot justify vacatur . . ..") (citations omitted). The sole questions presented under the circumstances here are (1) whether the Panel exceeded the scope of its authority; or (2) whether the decision was made in manifest disregard of the law and in violation of public policy. *See Kergosien*, 390 F.3d at 353-58.

The second ground for vacatur is easily dismissed. Under Texas law older than the undersigned senior judge, an oral agreement may supersede a written agreement not required by law to be in writing, even if the written agreement prohibits oral modification. *E.g.*, *Morrison v. Insurance Co,. of N. Am.*, 6 S.W. 605, 609 (Tex. 1887); *see Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 153 (Tex. App.--Texarkana 1988, writ denied) ("A written agreement is of no higher legal degree than an oral one, and either may vary or discharge the other."); *Apperson v. Shofner*, 351 S.W.2d 367, 369 (Tex. Civ. App.--Waco 1961) ("[T]here can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing.") (quoting *Morrison*, 6 S.W. at 609). Enforcement of the oral agreement, even in the presence of the

6

Agreement's prohibition of such a thing, was therefore well within the bounds of the common law.

The real question, hotly disputed here, is whether the Panel exceeded the scope of its authority. The scope of an arbitrator's authority is defined by (1) the contract containing the arbitration clause; and (2) and the submission agreement. *Executone*, 26 F.3d at 1323; *see Kergosien*, 390 F.3d at 354 ("If the parties go beyond their promise to arbitrate and actually submit an issue to the arbitrator, we look both to the contract and the scope of the submissions to the arbitrator to determine the arbitrator's authority"). The court below found, and this Court agrees, that the validity of the 2000 Oral Agreement was included in the submission agreement for arbitration. Accordingly, the issue of oral modification was within the scope of the Panel's authority to decide. *See id.*; *see generally Domke on Commercial Arbitration* § 39.6 (3rd ed. 2003) (explaining that the focus of review is not on the legitimacy of the relief an arbitrator grants, but rather on whether the arbitrator has the authority to reach the issue). Because the Panel did not exceed the scope of its authority in allowing the oral modification, the Canada Award must be affirmed. *See Kergosien*, 390 F.3d at 354-55. And there the analysis ends.

In opposition, Heritage perseveres nonetheless. First, Heritage maintains that it did not submit the issue of oral modification to the Panel voluntarily; rather, it was forced to do so by the Employment Agreement's expansive arbitration clause. Under the Agreement's arbitration clause, the parties were required to arbitrate "any and all claims." Agr. § 11.1 ["Arbitration Clause"]. "Any and all claims" was to be "broadly construed" to include "all disputes, claims, causes of action and other controversies

7

which now exist or which may hereafter arise at any time" between Canada and Heritage; and "all disputes arising under or relating in any way to this Agreement." Agr. § 1.2(b). Instead of supporting Heritage's position, however, this argument confirms that the Canada Award, based on an employment-related dispute between the parties, is rationally inferable from the contract purporting to govern the whole of the parties' employment relationship. The award thus "draws its essence," as it must, from the Agreement itself. *See Executone*, 26 F.3d at 1325 ("[T]he award must, in some logical way, be derived from the wording or purpose of the contract."). Although the Court need not reach the issue, the expansiveness of the Arbitration Clause alone would likely support the Panel's jurisdiction, even in the absence of the express submission of the 2000 Oral Agreement to arbitration. *See Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 & n.2 (5th Cir.) ("When parties include such a broad arbitration clause, they intend the clause to reach all aspects of the relationship."), *cert. denied*, 509 U.S. 923 (1993).

In its second argument for vacatur, Heritage asserts that merely submitting the oral contract to the Panel's jurisdiction did not give the Panel the authority to enforce its terms where it differed from the Agreement. In other words, Heritage distinguishes an arbitration panel's jurisdiction from the scope of its authority, differentiates what the Panel may *hear* versus what it may *do*, and argues that submission satisfies only the former. This theory, though inventive, is unsupported by any Fifth Circuit decisions,[2]

---

[2] Heritage's reliance on dicta from a Seventh Circuit footnote is, without more, unpersuasive. *E.g.*, *Anheuser-Busch, Inc. v. Beer* et al. *Workers of Chicago and Vicinity, Ill., Local Union No. 744* 280, F.3d 1133, 1141 n.4 (7th Cir.), *cert. denied*, 537 U.S. 885 (2002). In *Anheuser-Busch*, an arbitration award was vacated when an arbitrator expressly stated that he was ignoring a collective bargaining agreement in favor of a "long-standing practice" to the contrary. *Id.* The *Anheuser-Busch* decision and its rationale were fractured by a well-reasoned

which employ the phrases "scope of authority" and "jurisdiction" interchangeably and coextensively in the arbitration context. *See, e.g., Kergosien*, 390 F.3d at 354 (addressing "jurisdiction" in a paragraph headed "Did the Arbitrator Exceed His Powers?"). In this case, moreover, such a distinction would have the absurd effect of telling the Panel that although they can hear evidence of oral modification, they may not allow it any effect.

Heritage's logic, even if adopted in full, does not play out in its favor. The reason is threefold, under circumstances that combine to make this case unusual: (1) no record was made of the arbitration proceedings; (2) the issue being arbitrated was an oral contract modification of thus unknowable scope; and (3) the written contract is governed by Texas law, which allows for oral modification of a written agreement notwithstanding the written agreement's terms. Under these circumstances, the Court cannot say with certainty whether the Canada Award does or does not violate the Arbitration Clause's prohibition against contravening the Agreement's terms for the simple, albeit circular, reason that any or all of those written provisions may have been orally modified. That one of the orally modified terms is itself a prohibition against oral modification forms a *koan* resolvable by Texas law's allowing that very thing. *See Morrison*, 6 S.W. at 609.

Finally, Heritage cites a line of cases for an "emerging trend" that "an arbitral award contrary to the express contractual provisions will not be respected." *Houston Lighting & Power Co. v. International Broth. of Elec. Workers*, 71 F.3d 179, 182 (5th Cir. 1995), *cert. denied*, 519 U.S. 809 (1996); *see, e.g.*, *Bruce Hardwood Floors, Div. of*

---

concurrence and dissent, *see id.* at 1145-49, and should be read narrowly. *See Holden v. Deloitte and Touche LLP*, 390 F. Supp. 2d 752, 776 (N.D. Ill. 2005) (characterizing the case as "the only Seventh Circuit decision . . . in which an arbitral order was vacated").

9

*Triangle Pacific Corp. v. UBC, So. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 452 (5th Cir.), *cert. denied*, 522 U.S. 928 (1997). These cases are inapplicable here. Each involves arbitration of a Collective Bargaining Agreement subject to a different analysis because of its unique character – not negotiated by the parties to arbitration, unalterable by those parties in any way, having presumptive enforceability, and requiring uniform application to a broad spectrum of parties and disputes. In any event, this case is fully distinguishable on the basis, explored above, that it revolves around a legally unobjectionable oral agreement of unknowable scope.

What Heritage is really asking the Court to do is exactly what the Court cannot: second-guess the Panel's decision on the merits of contract interpretation. *See Kergosien*, 390 F.3d at 355 ("[C]ourts have no business overruling an arbitrator because their interpretation of the contract is different from his.") (internal quotations omitted). Oral modification of the Agreement was before the Panel by submission; and oral modification the Panel must have found. Having no basis for vacatur of the Panel's decision, the Court affirms the Canada Award.

C.  <u>Heritage Award</u>

In the issue on cross-appeal, Canada asks the Court to reverse the bankruptcy court's rendering of the Heritage Award, and instead to reinstate the arbitration panel's denial of Heritage's costs and attorney's fees. As in the Canada Award analysis, this issue is reviewed *de novo*. *Brooke*, 294 F.3d at 672.

After hearing on the merits, the Panel refused to award Heritage its attorney's fees and half the costs of arbitration. This decision appears to violate plain language in the Agreement requiring the Panel to do so. In Section 10.8 of the Agreement, Canada

10

agreed to "pay to [Heritage] within five (5) days after demand all legal fees and other expenses incurred by or on behalf of the Company relating to or in connection with enforcing this Agreement or in defending any action by [Canada] to enforce this Agreement, *regardless of which party ultimately prevails in said action*." Agr. § 10.8 (emphasis added) ["Fee Provision"]. In Section 11.4, the Agreement provides that "costs and expenses of the arbitrators for any arbitration shall be split evenly" between Canada and Heritage. Agr. § 11.4 ["Cost Provision"]. The Panel declined to award Heritage any recovery under either provision; and Heritage moved in the bankruptcy court for vacatur.

Agreeing with Heritage, the bankruptcy court vacated the arbitration decision on grounds that the Panel ignored the Fee and Cost Provisions. After evidentiary hearing, the bankruptcy court rendered an award in favor of Heritage for all of its attorney's fees and half the costs of arbitration per the Agreement's written terms.

The question presented is whether the Panel exceeded the scope of its authority in refusing to enforce the Agreement's Fee and Cost Provisions. *See Kergosien*, 390 F.3d at 354. After consideration, the Court holds that it did not.

On this issue, the Panel derives its authority directly from the terms of the Agreement itself. The Agreement's Arbitration Clause gave the Panel a broad mandate to hear "any and all claims." Agr. § 11.1. The definition of "any and all claims" includes "all disputes regarding the validity, enforceability, effect, construction or application of any of the provisions" of the Agreement. Agr. § 1.2(b); *see* Agr. § 10.2 (contemplating enforceability construction by "any court *or arbitration panel* of competent jurisdiction") (emphasis added) [collectively, "Enforceability Clauses"]. Validity of the Fee and Cost

11

Provisions were contested in the arbitration;[3] and this Court has no record of what persuasive evidence and/or legal argument might have been offered in support. With no written opinion by the Panel, the Court cannot know or assess the Panel's grounds for rendering the Provisions invalid. If held unenforceable, however, the Provisions would have been severed automatically from the Agreement. *See* Agr. § 10.2 (treating "illegal, void, invalid, or unenforceable" clauses as if they "had never comprised a part of this Agreement"). Thus the Arbitration Clause's stricture against a result inconsistent with the Agreement would not be compromised.

Under that reasoning, denial of Heritage's attorney's fees and costs is rationally inferable from the Arbitration and Enforceability Clauses of the Agreement. The Court cannot conclude that the Panel exceeded the scope of its authority when, as it must have done, it rendered the Fee and Cost Provisions void. *See Buckeye Check Cashing, Inc. v. Cardegna*, --- U.S.---, 126 S. Ct. 1204, 1209 (2006) (holding that contract enforceability is a construction decision within the province of the arbitrator); *Dole Ocean Liner Express v. Georgia Vegetable Co.*, 84 F.3d 772, 774 (5th Cir.), *modified on other grounds*, 93 F.3d 166 (1996) ("Because the determination of whether the [contract] provision was legally enforceable was left to the arbitration panel under the contract, the arbitration panel did not 'exceed their powers' by finding, as a matter of law, that it was void."). Whether or not the basis of the avoidance was legally correct, the Panel's decision must stand. *See Kergosien*, 390 F.3d at 356 ("This court . . . has repeatedly held

---

[3] Record, Vol. 11 at 1690 (Canada's Second Amended and Specified Claims); Record, Vol. 4 at 471 (Canada's Response to Motion to Dismiss and Answer to Counterclaim).

that the failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award.").

In vacating the Panel's decision, the bankruptcy court impermissibly substituted its own construction of the Agreement over the Panel's. *See Kergosien*, 390 F.3d at 355; *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 510 (2001) ("[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.") (internal quotations omitted).  Accordingly, the Heritage Award must be vacated, and the Panel's decision denying it reinstated.

### III.  Conclusion

For the reasons given above, the Bankruptcy Judgment is **AFFIRMED IN PART, REVERSED IN PART**, and **RENDERED**.  The Heritage Award (sections 1(b) and 1(c) of the Bankruptcy Judgment) is **VACATED**.  The Canada Award (section 1(a) of the Bankruptcy Judgment) is **AFFIRMED**.  The original Arbitration Decision of April 14, 2004, is reinstated and **AFFIRMED** in its entirety.

The claim amount allowed in favor of Canada as an unsecured, non-priority claim against the Debtor Heritage in the Bankruptcy case *In re The Heritage Organization, L.L.C.*, No. 04-35574-BJH-11, is modified to be $6,218,679.40 (comprised of the $6,161,270.08 Canada Arbitration Award, plus $57,409.32 additional prejudgment interest awarded by the Bankruptcy Court).

The parties are **DIRECTED** to confer and to submit by noon, <u>September 22, 2006</u>, an agreed form of Judgment consistent with this Order, for signature by the Clerk of Court.

SO ORDERED.

DATED: September 14, 2006.

_____<br>
BAREFOOT SANDERS, SENIOR JUDGE<br>
UNITED STATES DISTRICT COURT<br>
NORTHERN DISTRICT OF TEXAS